# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1004

CAF 11-02082

PRESENT: SCUDDER, P.J., SMITH, CENTRA, LINDLEY, AND MARTOCHE, JJ.

---

IN THE MATTER OF ANGELA N.S.
------------------------------------------------
NIAGARA COUNTY DEPARTMENT OF SOCIAL SERVICES,      MEMORANDUM AND ORDER
PETITIONER-RESPONDENT;

JOSHUA S., RESPONDENT-APPELLANT.

---

PATRICIA M. MCGRATH, LOCKPORT, FOR RESPONDENT-APPELLANT.

SUSAN M. SUSSMAN, NIAGARA FALLS, FOR PETITIONER-RESPONDENT.

THOMAS J. CASERTA, JR., ATTORNEY FOR THE CHILD, NIAGARA FALLS, FOR ANGELA N.S.

---

Appeal from an order of the Family Court, Niagara County (David E. Seaman, J.), entered September 27, 2011 in a proceeding pursuant to Social Services Law § 384-b.  The order, among other things, transferred respondent's guardianship and custody rights of the subject child to petitioner.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum:  On appeal from an order terminating his parental rights with respect to his daughter on the ground of abandonment, respondent father contends that the order must be reversed because he demonstrated that he was committed to parenting his daughter and that his efforts in that regard were frustrated by petitioner.  We reject that contention.  "A child is abandoned if his or her parent 'evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or [petitioner], although able to do so and not prevented or discouraged from doing so by [petitioner]' " (*Matter of Joseph E.*, 16 AD3d 1148, 1148, quoting Social Services Law § 384-b [5] [a]).  A child is deemed abandoned when the parent engages in such behavior "for the period of six months immediately prior to the date on which the petition [for abandonment] is filed" (§ 384-b [4] [b]; *see Matter of Michael B.*, 284 AD2d 946, 946; *Matter of Christina W.*, 273 AD2d 918, 918).  "In the absence of evidence to the contrary, such ability to visit and communicate shall be presumed" (§ 384-b [5] [a]).

Here, it is undisputed that the father had no contact with the child during the relevant six-month period, i.e., from September 19, 2009 to March 19, 2010, when the abandonment petition was filed.  In

fact, the father admitted at the hearing that he had no contact with the child since he left the residence of the child's mother in July 2008 and moved to Ohio. Although the father testified that he spoke regularly with the mother and asked about the child, the record establishes that he made no attempts to visit the child, not even when he returned several times to visit friends in the Niagara Falls area, where the child resided. Even assuming, arguendo, that the father did not realize that the child was in foster care until September 2009, as he testified at the hearing, we note that he had previously been served with a copy of the neglect petition and did not respond to it or appear in court with respect to that proceeding. Additionally, the father made no efforts to see the child at the mother's house where he purportedly believed the child was living.

We reject the father's contention that his failure to contact the child was justified because petitioner's caseworker failed to return numerous telephone calls he allegedly made seeking information about the child. Although petitioner does not appear to have done anything to facilitate contact between the father and the child, "petitioner was not required to show that it made diligent efforts to encourage [the father] to maintain contact with his daughter in order to prevail on the abandonment petition" (*Matter of Christina S.*, 251 AD2d 982, 983). We agree with the court that the father's telephone calls to petitioner's office do not rise to the level of effort required " 'to defeat an otherwise viable claim of abandonment' " (*Matter of Maddison B. [Kelly L.]*, 74 AD3d 1856, 1857). We also note that, although the father was served with the abandonment petition in or about March 2010, he failed to appear in court until approximately 11 months later, on the day that the evidentiary hearing was scheduled to commence against the child's mother. There is no reason apparent in the record for the father's 11-month delay in responding to the abandonment petition.

Entered:  November 9, 2012                          Frances E. Cafarell
                                                    Clerk of the Court